In re Loy L. KING, Julia C. King, t/a Loy L. King Real Estate, Debtors.

Everett ELKINS, Bernadette M. Elkins, Movant,

v.

Loy L. KING, Julia C. King, t/a Loy L. King Real Estate, Respondents.

Bankruptcy No. 1–84–00189.

United States Bankruptcy Court, M.D. Pennsylvania.

Aug. 24, 1984.

Robert D. Kodak, Harrisburg, Pa., for debtors.

ROBERT J. WOODSIDE, Bankruptcy Judge.

## MEMORANDUM

### GRANTING RELIEF FROM AUTOMATIC STAY

On February 11, 1981, Everett Elkins and Bernadette Elkins (the movants) entered into an agreement of sale with Loy L. King, one of the debtors for the sale of certain real estate located at the corner of Route 194 and Bashoar Road in Union Township, Adams County, Pennsylvania. The agreement called for a total consideration of $26,500 payable $1,000 before signing, $1,650 on or before April 1, 1981, interest monthly at a rate of 12% per annum, and the balance of the unpaid principal balance on or before March 1, 1983.

The $2,650 and interest to March 1, 1983 was paid but Loy L. King could not pay the unpaid principal balance on or before March 1, 1983. The movants and Loy L. King and Julia C. King (debtors) negotiated a new agreement which acknowledged receipt of the $2,650, called for interest at 13½% to be paid monthly, and provided that the balance of twenty three thousand eight hundred fifty dollars ($23,850) be paid on or before March 1, 1984.

The debtors paid the interest except for the last month but could not make the payment of $23,850 called for on or before March 1, 1984. The debtors attempted to renegotiate the agreement with the movants but no agreement could be reached and the movants took possession of the property.

The debtors had obtained a tenant who was using the property as a used furniture center. The monthly rental as fixed by the debtors and continued by the movants is $260. Subsequent to their retaking possession the movants entered into an agreement to sell the property to the present tenant for $24,000. Part of the consideration required the movants to take a mortgage.

The debtors filed their Chapter 11 petition on March 13, 1984. The movants filed their motion for relief from automatic stay on June 14, 1984 essentially alleging that under the facts as recited above the debtors had no interest in the property and even if they had the amount owed to movants exceeded the value of the property. The debtors answered on July 13, 1984 alleging that they did have an interest pursuant to the March 1, 1983 agreement and that the value of the property exceeds the amount owed to the movants.

The first question presented is whether the debtors have an interest in this agreement of sale. The agreement called for "Final Settlement which shall be on or before March 1, 1984." However, the agreement did not call for time to be of the essence. Both the February 11, 1981 and the March 1, 1983 agreements were printed forms with various terms typed on them. The February 11, 1981 form had typed on it "TIME IS OF THE ESSENCE and PART CONSIDERATION of this agreement." The March 1, 1983 agreement made no mention of time being of the essence.

■ In Pennsylvania it is significant to make time of the essence in a contract for the sale of real estate. If that phrase is not provided, performance with regard to settlement may be had within a reasonable time of the date set forth in the agreement. See Bogojavlensky v. Logan, 181 Pa.Super. 312, 124 A.2d 412 (1956). Thus the debtors might argue that they had a reasonable time to perform under the contract and should be allowed to attempt to market this property. We think, however, that the circumstances surrounding this transaction do not warrant that conclusion and that the conduct of the parties demonstrated that they considered time to be of the essence.

EFFECT OF SUBSEQUENT CONDUCT, AGREEMENT, OR CIRCUMSTANCES. Although time is not originally made of the essence of a contract for the sale of realty, it may become so by subsequent conduct of the parties, as where one party, after the time of performance has arrived or is past, notifies the other party that he will insist on performance by a certain date.

32 P.L.E. Sales of Realty § 59 Page 279.

In this case, the debtors tried to extend the time for performance and the movants refused to extend the time or draft a new agreement. It is obvious that the movants considered the time of settlement to be of the essence. The debtors surrendered possession to movants and allowed them to collect the rents and take over management of the property. They took no formal action after filing their petition to reclaim possession. We view their actions as recognition that their failure to pay the $23,-850 on March 1, 1984 terminated their interest in the agreement.

Even if we viewed the debtors as having a reasonable time to make settlement we would have to hold that their failure to perform until the date of the hearing is unreasonable. In essence this would be an executory contract subject to assumption by the debtors. If there is a default in such an agreement they can only assume the agreement if they cure or provide adequate assurance that they will promptly cure such default. See 11 U.S.C. § 365(b)(1)(A). On the date of the hearing the debtors owed $26,284 to movants. They obviously could not make this payment. What they are asking this court to allow them to do is to try to market this property to see if they cannot get a price in excess of the amount owed to movants. This does not provide the movants with adequate assurance of a prompt cure of the debtors' default.

Even if we felt the debtors had a viable interest in this property we would lift the stay because it is our opinion that the property is not worth the amount owed to the movants. The movants are entitled to have the automatic stay lifted if there is no equity in the property and it is not needed for an effective reorganization. This is an investment property so it obviously is not needed for reorganization purposes unless it has equity.

The debtors offered the testimony of a realtor who opined that the property was

worth $30,000. He conceded that because of some unique facts concerning the building there were no good comparables. His one comparable was a house and garage that sold together for a little over $90,000. The relator then determined that the house was worth $50,000 and considering the "unique facts" concluded that the subject property was worth $30,000.

Some of the things that make this building unique is that it has no water and sewer and no heat. There are building restrictions which further limit the use of this property. All concede that there are few uses for this building. The present use as a used furniture center is probably the highest and best use.

One of the debtors, Loy L. King, who is a realtor, testified that he felt the value of the property was between $32,000 and $35,000.

One of the movants, Everett Elkins, who is also a realtor, testified that he felt the property was worth $26,000. We find his testimony to be the more credible and accept that figure as the true value of the property. He had entered into the original agreement with the debtors which fixed the market value between two relators at $26,500. A little over two years later on March 1, 1983, the movants concluded that the same price was fair and still later in 1984 the movants have entered into an agreement to sell this property for $24,000. Under all the facts and circumstances of this case the movants should be allowed to consumate the present agreement with their tenant.